UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

B.T., a minor, by and through his
mother and next friend, Wanda
Jackson,

       Plaintiff,

    v.

KEITH BATTLE, individually and in
his official capacity *et al.*,

       Defendants.

CIVIL ACTION NO.
1:18-cv-00919-JPB

## ORDER

This matter is before the Court on Defendant Keith Battle's ("Battle")

Motion for Summary Judgment (ECF No. 39) and Plaintiff B.T.'s Motion to

Compel (ECF No. 32).  Having reviewed and fully considered the papers filed

therewith, the Court finds as follows:

## I.    BACKGROUND

B.T. filed a complaint alleging claims against several Fulton County School

System ("FCSS") employees for violating his constitutional rights (Fourth

Amendment (excessive force) and Fourteenth Amendment (discrimination)) in

connection with an incident that occurred at Tri-Cities High School in March 2015.

B.T. also alleges state law claims for battery and punitive damages.  The claims

against all defendants, except those against Battle, in his individual capacity, have been dismissed.

Battle is a retired Captain of the Fulton County Sheriff's Department, who worked as a Resource Officer for the FCSS from 2012 to 2017. At the time of the incident[1] in question, Battle was 6' 2" tall and weighed 218 pounds. B.T. was in the ninth grade and was 5" 7' tall and weighed 118 pounds.

At some point prior to the incident, B.T. threatened on Instagram to shoot another student at the school because he believed his girlfriend was cheating with the other student. On the day of the incident, B.T. approached the student in the hallway of the school and initiated a fight. The fight was ultimately broken up, and an administrator escorted B.T. to the school's office.

B.T. was suspended for one day, and his mother was asked to pick him up from school. Coach Spears, a school administrator, instructed B.T. to remain in

---

[1] The facts set forth herein are presented in the light most favorable to B.T. based on the evidence in the record. *See Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) ("At summary judgment, we cannot simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances."); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (stating that in evaluating a summary judgment motion based on qualified immunity, the court is "required to resolve all issues of material fact in favor of the plaintiff").

the office until he could be escorted to "in-school suspension," where he could wait to be picked up.

B.T., however, walked out of the office without permission and refused to return when instructed to do so by Coach Spears. He threatened to hit Coach Spears because he claims Coach Spears called him an insulting name, and he attempted to punch Coach Spears as Coach Spears followed him to the school parking lot. Coach Spears grabbed B.T.'s arm and pinned him against a car until Battle arrived.

Battle handcuffed B.T., and Coach Spears tried to calm him down. B.T. disputes Battle's testimony that he repeatedly banged his head against the car in anger. Battle eventually walked B.T. back into the school to Battle's office.

At the door of Battle's office, while Battle had one hand on B.T. and was trying to get his key out to unlock his office door with the other hand, B.T. tried to jerk his arm away from Battle. B.T. testified at his deposition that he did so because Battle was squeezing his arm. In a split-second, Battle grabbed B.T.'s shirt with both hands and used a "leg sweep takedown" maneuver to restrain B.T. Battle described the maneuver as sticking his leg out to trip B.T. in order to prevent him from fleeing. B.T. asserts that Battle picked him up in the air and slammed him on the floor.

3

Battle assisted B.T. off the floor after Battle opened the office door, and they entered the office.  B.T. was still angry, and he cursed and banged his head against the wall of the office.  Battle subsequently called for medical assistance because B.T. appeared to be bleeding from an injury to his head.  The school nurse administered aid, and it was determined that something might be wrong with B.T.'s arm.

Battle called for emergency medical service, and B.T.'s arm was placed in a sling by the responders.  His mother refused to give permission to transport him to the hospital.  B.T. later reported to the school that his arm was broken during the incident.

B.T. testified at his deposition that he did not believe that Battle was trying to hurt him or break his arm.  On re-direct, B.T. further stated that Battle's intention "wasn't to break [his] arm."  However, in connection with his opposition to summary judgment, B.T. submitted an affidavit stating that it is "common sense" that Battle was trying to hurt him because "people slam people[] to hurt them," and Battle "had to know [that] he would hurt [him]."

The Fulton County Schools Police Department investigated the incident and cleared Battle of wrongdoing.  The Fulton County Public Safety Office reached the same conclusion, and the Fulton County District Attorney declined to move

forward with a complaint filed by B.T.'s mother. B.T. was not charged with a crime in connection with the incident.

With respect to his discrimination claims, B.T. alleges in the Complaint that he was treated differently than students of other races. He points to Battle's arrest record, which reflects that during his time as a Resource Officer (from 2012 until 2017), he arrested thirty-one students, all of whom were Black, except one.

However, B.T. testified that he does not remember seeing White, Hispanic or Asian students engaged in serious incidents at the school, and he has no personal knowledge that students of other races took actions similar to his, but Battle treated them differently. B.T.'s mother is also not aware of any policies of the Fulton County Board of Education, including the school police department, that encourage officers to treat African American students in a discriminatory manner.

Battle denies he discriminated against B.T. and testified that at no time during his employment with the FCSS did he witness students of other races engage in behavior identical or similar to that which B.T. exhibited.

## II. __DISCUSSION__

### A. __Legal Standard__

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted).  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court . . . is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.*  In carrying this burden, "[a] mere

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

Also, "[w]hen the nonmovant has testified to events, [the court] do[es] not . . . pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) . . . . Instead, when conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). As the Eleventh Circuit has summarized, "Federal Rule of Civil Procedure 56 and countless decisions applying it express the modern rule that a case should be put to the jury if there is any genuine issue of material fact, including one created solely by the testimony of a party." *Feliciano*, 707 F.3d at 1247. *See also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012) ("Our case law recognizes that, even in the absence of [corroborative] evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment.").

However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B.   <u>Analysis</u>

Battle contends that B.T.'s excessive force claims should be dismissed on the basis of qualified and official immunity and that punitive damages are improper because there is no evidence of the requisite elements. He also argues that B.T.'s discrimination claim fails because B.T. has not shown that he was treated differently than other similarly situated students.

B.T. did not rebut Battle's argument that the Fourth Amendment excessive force claims should be dismissed on the basis of qualified immunity. The only specific mention of the Fourth Amendment claims in B.T.'s response brief consists of the following heading, which follows the "Standard of Review" section: "Plaintiff's Claims Against Battle Pursuant To 42 U.S.C. § 1983 for violation Of Plaintiff's Fourth Amendment rights and Fourteenth Amendment rights as provided in the Equal Protection Clause." Despite the heading's pronouncement,

8

the respective section focuses generally on the facts of the case and makes arguments and cites authority with respect to *only* the equal protection claim. There is no reference to what B.T. must show in order to overcome a qualified immunity defense regarding the excessive force claim, much less any effort to demonstrate that B.T. has satisfied his burden in that regard.  Therefore, Battle asserted during oral argument that B.T. had abandoned this claim.

In response, B.T. asserted that he believed he had responded to Battle's argument adequately in his brief and focused on the testimony of a teacher who observed a portion of the incident, concluding—without citing authority—that the force Battle used during the incident was "not *de minimis*" and that the "balancing act" under "case law" demonstrates such force was "not appropriate."  B.T.'s oral argument centered mostly on the equal protection claim and his motion to compel non-party FCSS to produce related documents.

The parties' arguments are addressed in turn below.

## I

In cases brought against government officials acting within the scope of their discretionary authority, the doctrine of qualified immunity protects them from civil liability unless their conduct violated both the plaintiff's constitutional right and

clearly established law.[2]  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  "The defense of qualified immunity aims to strike a balance between 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  *Taylor v. Taylor*, 649 F. App'x 737, 742 (11th Cir. 2016).  The burden is on the defendant to raise the defense, and once the defendant meets his burden, the burden shifts to the plaintiff to show that qualified immunity should not apply.  *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).

Courts in the Eleventh Circuit "conduct a two-step inquiry to decide whether qualified immunity should be granted:  (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[?]; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, … [was] the right . . . clearly established[?]"  *Shuford v. Conway*, 666 F. App'x 811, 815 (11th Cir. 2016).  "'Both elements must be satisfied for an official to lose qualified immunity.'"  *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

---

[2] B.T. does not dispute that Battle was acting within the scope of his discretionary authority.

As a threshold matter, the Court considers whether B.T. has abandoned his Fourth Amendment excessive force claim.  It is well-settled that the onus is on the party opposing summary judgment to formulate arguments in support of his position.  *See Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013). The Eleventh Circuit has explained that "[a] passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."  *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012).  Noting that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," the *Clark* court "agree[d] with the district court's finding that in failing to respond to the defendants' arguments, [the] [plaintiffs] [had] abandoned their excessive force and state law claims."  544 F. App'x at 855.

In *Jones v. Bank of America, N.A.*, the Eleventh Circuit similarly agreed with the district court's conclusion that "when a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned" and affirmed the court's grant of summary judgment against the plaintiff on that basis.  564 F. App'x 432, 434 (11th Cir. 2014).  As would be expected, district courts routinely follow the Eleventh Circuit's lead in this regard.  *See*, *e.g.*, *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (deeming the

plaintiff's retaliation claim abandoned where she failed to respond to the

defendant's argument for dismissal of the claim on summary judgment); *Palmer v.

Potter*, No. 1:08-CV-3876-CAM-AJB, 2010 WL 11500520, at *15 (N.D. Ga. Jan.

12, 2010), *report and recommendation adopted*, No. 1:08-CV-3876-CAM-AJB,

2010 WL 11508700 (N.D. Ga. Mar. 25, 2010) (finding that the plaintiff abandoned

his discrimination claim because "[n]one of [his] arguments (even liberally

construed) explicitly or implicitly attempt[ed] to rebut or reject [the] [d]efendant's

. . . arguments" on summary judgment); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp.

2d 1301, 1324 (N.D. Ga. 2001) (granting summary judgment because "[w]hen a

party fails to respond to an argument or otherwise address a claim, the [c]ourt

deems such argument or claim abandoned"); *Maddox v. CBE Grp., Inc.*, No. 1:17-

CV-1909-SCJ, 2018 WL 2327037, at *3 n.3 (N.D. Ga. May 22, 2018) (citing

*Hamilton* as support for the court's refusal to consider an issue "raised in . . . a

cursory manner").

    In this case, B.T.'s response brief is devoid of substantive argument in

support of his Fourth Amendment claim.  Despite a heading in the brief

referencing the Fourth Amendment claim, the respective section of the brief

focuses only on the equal protection claim.  There is no reference to the Fourth

Amendment qualified immunity standard and no rebuttal argument or citation of

authority on this issue.  This omission is particularly glaring because the burden is on ***B.T.*** to show that the qualified immunity defense is improper here.  *See Lewis*, 561 F.3d at 1291.

Indeed, a necessary part of overcoming Battle's qualified immunity defense is showing that he violated a constitutional right that was ***clearly*** established at the time of the incident.  *See Smith v. LePage*, 834 F.3d 1285, 1297 (11th Cir. 2016). This is accomplished by identifying "'(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'"  *Id*.  This showing is required even if Battle is found to have violated B.T.'s Fourth Amendment right.  *Id*.  Without it, Battle is immune from liability.

Yet, B.T. made no effort to make the required showing.  Even when Battle asserted during oral argument that B.T. had abandoned his Fourth Amendment claim because his response brief did not address Battle's argument for dismissal, B.T. did not take that opportunity to provide an adequate response.  Rather, he made only generalized statements, unsupported by citation to any authority.  For example, he argued that the "balancing act" under "case law" demonstrates that the

force Battle used was "not appropriate."  The Court (and Battle) are left to guess and fill in the blanks as to what case law (in a large universe) might be relevant to the situation-specific first prong of the qualified immunity defense.  Further, B.T. did not address the second prong of the qualified immunity inquiry at all.

In sum, the bare heading in B.T.'s response brief and the inadequate and unsupported statements he made at oral argument fall far short of the clear rule in this Circuit that a party must do more than make a "passing reference" to an issue to bring it before the Court.  And the Eleventh Circuit is likewise clear that when a party neglects his burden in this regard, it is not the role of the district court to distill from the record and then consider arguments that the party could have made. In failing to respond adequately to Battle's arguments, the Court finds that B.T. has abandoned his Fourth Amendment excessive force claim and, on that basis, **GRANTS** Battle's Motion for Summary Judgment regarding such claim.

## II.

With respect to B.T.'s state law claims, Battle argues that he is entitled to official immunity and that punitive damages are improper because he did not act with malice.  He also contends that he cannot be liable for battery because the arrest was lawful, and his use of force was reasonable.

B.T. responds that there is evidence of malice in record that would defeat an official immunity defense, including Battle's contradictory statements at his deposition.  B.T. also claims that the leg sweep maneuver is not authorized by the FCSS.

Under Georgia law, "[t]he doctrine of official immunity . . . protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001).  Where there is no evidence in the record of malice or an intent to injure, summary judgment on the basis of official immunity is proper.  *Id.* at 346.

In this case, there is no evidence that Battle acted with malice or intent to injure B.T.[3]  To the contrary, Battle testified that the leg sweep maneuver was a split-second reaction to B.T.'s jerking movement, and B.T., himself, testified that he did not believe that Battle was trying to hurt him or break his arm.  Even on re-direct, B.T. further stated that Battle's intention "wasn't to break [his] arm." B.T.'s subsequent attempt to walk back these statements in connection with his opposition to summary judgment does not succeed in doing so because the affidavit avers only that it is "common sense" that Battle was trying to hurt him

---

[3] B.T. does not dispute that Battle's actions were discretionary in scope.

because "people slam people[] to hurt them," and Battle "had to know [that] he would hurt [him]."  These statements are not sufficient to show the requisite specific evidence of "wilfulness, malice, or corruption."  *Lang*, 549 S.E.2d at 344. Additionally, B.T. has not cited evidence to substantiate his claim that the leg sweep maneuver is barred by the FCSS, and such claim is not supported by the record.

Accordingly, Battle is entitled to official immunity, and the Court **GRANTS** his Motion for Summary Judgment with respect to B.T.'s state law claims.

For these same reasons, the Court **GRANTS** Battle's Motion for Summary Judgment regarding B.T.'s punitive damages claims.[4]  *See Adams v. Carlisle*, 630 S.E.2d 529, 542 (Ga. Ct. App. 2006) ("To authorize the imposition of punitive damages, there must be evidence of wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences.").

---

[4] The punitive damages claim is dismissed also because B.T. did not respond to Battle's argument that punitive damages are improper here, and the Court considers the claim abandoned.  *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

## III.

In his Complaint, B.T. alleges that Battle previously witnessed Caucasian, Hispanic and Asian students at his high school engage in actions "identical or virtually identical" to those he took on the day of the incident, but Battle never arrested them for those actions.  B.T. further claims Battle targeted him only because he is African American.  The parties analyze this issue as a selective enforcement claim under the Fourteenth Amendment, so the Court will treat it as such.

It is axiomatic that the Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996).  "The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards,'" and "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).  In other words, a selective enforcement claim requires proof that "individuals of a different race could have been arrested for the same crime but were not." *Williams v. Williamson*, No. 5:07-cv-186, 2009 WL 2982835, at *7 (M.D. Ga. Sept. 11, 2009). *See also Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1411 (S.D. Fla.

2014).  (To prevail on a selective enforcement claim, a plaintiff must present evidence that "(1) [the] plaintiff was treated differently from other similarly situated individuals, and (2) such differential treatment was based on impermissible considerations, such as race, religion, [*etc.*]").  "Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement."  *Swint v. City of Wadley*, 51 F.3d 988, 1000 (11th Cir. 1995).

Here, B.T.'s claim fails at the starting gate.  He has neither pointed to what law was selectively enforced against him, nor has he identified students of other races who committed the same or similar offense but were not arrested or otherwise disciplined.  To the contrary, he testified that he has no personal knowledge of any Asian, Hispanic or Caucasian students who took the same actions he did.  He also admitted that Battle never said anything to him that would lead him to believe that Battle treated him that way because he is Black.

Notwithstanding this testimony, B.T. argues his claims are supported by the record but offers only conjecture.  For example, he argues:

> Battle has arrested at least 31 students from the time he was hired as a
> school resource officer in 2012 until June 1, 2017. Each and every
> student has been Black, except one Hispanic male. [Cit.]  It is
> disingenuous to believe that no Caucasian, Hispanic or Asian student,
> at the innumerable schools where Battle has worked as a resource

> officer, has ever engaged in behavior similar to the Plaintiff's, i.e.,
> being physically restrained by a teacher or administrator.

He also points to Battle's 2012 FCSS job application, which identifies the South Fulton and Sandy Springs areas as preferred assignments, as evidence of discriminatory intent and that Battle did not want to work at the predominantly African American Tri-Cities High School. These unsupported deductions are not sufficient to carry B.T.'s burden to make a *prima facie* case of discrimination. *See Brown v. Shelby Cnty. Bd. of Educ.*, 719 F. App'x 889, 891 (11th Cir. 2017) (stating that a "[p]laintiff bears the ultimate burden of proving [discrimination] by a preponderance of the evidence").

Based on the foregoing analysis, the Court **GRANTS** Battle's Motion for Summary Judgment with respect to B.T.'s Fourteenth Amendment claims.

## IV.

B.T. seeks to compel non-party FCSS to produce the following categories of documents:

> All incident and arrest reports of the detention, seizure and or arrest of a Fulton County School student, including their race, conducted by a Fulton County School Police officer, which resulted in physical injury to the student from January 1, 2010[,] until March 18, 2015.
>
> All investigative reports of the detention, seizure and or arrest of a Fulton County School student by a Fulton County School

> Police officer which resulted in physical injury to the student
> from January 1, 2010[,] until March 18, 2015.
>
> All records evidencing the race of all students who received out
> of school suspensions at Tri-Cities High School from January 1,
> 2010[,] until March 18, 2015.

FCSS objects to producing the documents on the grounds that they are not relevant to this action, and the request is not proportional to the needs of this case. Specifically, FCSS contends that these requests are "nothing more than a fishing expedition" because they are not limited to Battle or B.T. and rather extend to all students and all Resource Officers within the FCSS. FCSS further argues that such requests are outside the scope of this litigation because this case is against Battle, individually, and it is not a pattern or practice discrimination case against FCSS. Nor does it concern school suspensions. Finally, FCSS asserts that the temporal scope of the requests is overly broad because it reaches outside the statute of limitations for all claims.

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Under the 2016 Amendments to Rule 26(b), "the traditionally liberal limits on discovery must be juxtaposed against proportionality considerations in a given case and the Court's obligation to determine, on a case-specific basis, the appropriate scope of discovery." *In re*

*Arby's Rest. Grp. Inc. Litig.*, No. 1:17-cv-0514, 2018 WL 8666473, at *1 (N.D.

Ga. Aug. 16, 2018).  "[P]roportionality considerations include: 1) the importance

of the issues at stake; 2) the amount in controversy; 3) the parties' relative access

to relevant information; 4) the parties' resources; 5) the importance of the

discovery in resolving the issues; and 6) whether the burden or expense of

proposed discovery outweighs its likely benefit."  *Id*.  "Proportionality and

relevance are conjoined concepts; the greater the relevance of the information [at]

issue, the less likely its discovery will be found to be disproportionate."  *Runton v.*

*Brookdale Senior Living, Inc.*, No. 17-60664-CIV, 2018 WL 1083493, at *6 (S.D.

Fla. Feb. 27, 2018).  "When discovery does not relate to the actual issues in the

case, then it does not meet the relevance and proportionality requirements."  *Id*.

As FCSS points out in their opposition, it is not clear why system-wide

student and officer records would be relevant to B.T.'s claims against Battle in his

***individual*** capacity.  That type of pattern and practice discovery request is

typically propounded in actions against an institution.  Further, the burden of such

extensive discovery against a non-party compared to the low relevance of the

information sought to the specific claims at issue here, militates against allowing it.

Indeed, the Court finds that the requested discovery would not change its above

conclusion granting summary judgment on B.T.'s discrimination claims because it

would not remedy the lack of evidence in the record regarding similarly situated students, who *Battle* (as opposed to the FCSS) treated differently than B.T. Accordingly, B.T.'s Motion to Compel (ECF No. 32) is **DENIED**.

Given that Battle's Motion for Summary Judgment (ECF No. 39) is **GRANTED** in its entirety, the Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 31st day of December, 2020.

_____

J. P. BOULEE
United States District Judge